**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:2004-36 |
| | ) | |
| KEVIN P. FLOOD and | ) | |
| RAYMOND A. RABREAU, a/k/a "J.P.," | ) | JUDGE GIBSON |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**GIBSON, J.**

  This matter comes before the Court on the Government's Motion *in Limine* as to Raymond A. Rabreau (Rabreau) (Document No. 288), and its Brief in Support (Document No. 289) and its Supplemental Information with Respect to Federal Rule of Evidence 609(b), its Motion *in Limine* as to Kevin P. Flood (Flood) (Document No. 290), and its Brief in Support (Document No. 291) and Kevin P. Flood's Motions *in Limine* with Citations (Document No. 302). For the reasons stated herein, the Government's Motion as to Flood will be denied in part as to F.R.E. 609 and denied in part and granted in part as to F.R.E. 404(b), the Government's Motion as to Rabreau will be denied in part as to F.R.E. 609 and granted in part as to F.R.E. 404(b) and Flood's Motions will be granted in part and denied in part and denied in part as moot. The Court also will set forth its analysis and ruling upon the matter of admission of Rabreau's 2002 conviction pursuant to F.R.E. 404(b), as set forth in the Court's Memorandum Opinion and Order dated April 28, 2006 (Document No. 149).

**Motion in Limine as to Kevin P. Flood (Document No. 290)**

**F.R.E. 609**

First, the Government seeks to admit, under F.R.E. 609, Flood's 1992 conviction in Missouri

for "the felony offense of distribution/delivery/manufacture of a controlled substance." Government's

Motion, p. 1. The Court has previously reviewed this request in its Memorandum Opinion and Order

of Court dated April 28, 2006 and "conditionally excluded" the introduction of this conviction into

evidence at trial based upon a finding that the probative value of the conviction had not been proven

to outweigh its prejudicial effect, but that it would be admissible for impeachment purposes should

Flood testify as to a lack of a previous drug-related conviction or arrest or a lack of knowledge of the

"drug trade." Memorandum Opinion (Document No. 149) , pp. 13-14. The Court at the time was

proceeding with that conclusion based upon the assumption that the ten year sentence imposed for the

1992 conviction brought Flood's release date to 2002, a year well within the ten year limitation upon

previous convictions at F.R.E. 609 (b). Memorandum Opinion, p. 13.

However, the Government has attached to its motion Exhibit "A", which is Flood's "Rap Sheet",

that indicates that Flood was paroled from his 1992 conviction on November 6, 1995, a date which is

well beyond the ten year time limit from the time of conviction or release from confinement to the

beginning of the present trial on May 7, 2007. Because of Flood's year of release from confinement,

this 1992 conviction is not admissible "unless the court determines, in the interests of justice, that the

probative value of the conviction supported by specific facts and circumstance substantially outweighs

its prejudicial effect." F.R.E. 609(b). Unlike subsection (a)(1) of the rule, subsection (b) begins with

the assumption that a conviction older than ten years "is not admissible." *Id.* This understanding of the

2

circumstances of Flood's release from confinement changes the view with which this conviction must be evaluated. The Court's previous conditional analysis and ruling is thus void as it was conducted under the standard set forth in F.R.E. 609(a)(1). The present analysis requires the Government, as the proponent of the evidence, to prove that the probative value "substantially outweighs its prejudicial effect." F.R.E. 609(b). The Government's arguments of record only reflect the analysis of the evidence under the standard of subsection (a)(1). Therefore, the Government as proponent of this evidence, has not met the heightened standard of F.R.E. 609(b) necessary to use Flood's 1992 conviction for purposes of attacking Flood's truthfulness when he testifies at trial.

The Court, however, does recognize that the Government can and may use the 1992 conviction for purposes of proving the charge at Count III of the indictment, unlawful possession of a firearm by a convicted felon. *See* 18 U.S.C. §§ 922(g)(1), 924(e). The Government has filed an information as to the predicate offense for this charge, specifically identifying two felony convictions with dates of March 17, 1992 and July 2, 1992 respectively. *See* Document No. 316.[1]    To this end, the 1992 conviction is admissible to prove the necessary element of a prior conviction for the crime charged in Count III.[2]

### F.R.E. 404(b)

The Government also moves pursuant to F.R.E. 404(b) for the admission of evidence that demonstrates "a prior association" between Flood and former co-defendant Wayne Vance (Vance), co-

---

[1]This appears to be a misreading of Exhibit A to the Government's Motion as that Exhibit only references one conviction for the "court" charge of "DIST DEL MANUF CONTR SUB" with an arrest date of 3/17/1992, a sentence date of 6/26/1992 and a "CORRECTIONS ACTION DATE" of 7/2/1992.

[2]Flood has moved to sever this count for a separate trial. That motion will be analyzed in a separate opinion.

defendants Vincent Davis (Davis) and Kenneth Hamlin (Hamlin), and Keith Brubaker (Brubaker) that was based upon "the distribution of marijuana." Government's Motion, p. 2. Additionally, the Government will seek the introduction of "Flood's prior drug use, as well as his 1992 convictions under Rule 404(b) to establish his intent, his knowledge, his plan and preparation, and to rebut any claim that the marihuana was surreptitiously placed into his residence without his knowledge (mistake or surprise)." *Id.* Flood argues that the evidence proffered would not assist in proving any of the purposes set forth in F.R.E. 404(b) and that even if it did, the evidence would prejudice him in violation of F.R.E. 403.

In analyzing a request to introduce evidence under F.R.E. 404(b), federal courts are required to follow four "guidelines": 1) the evidence must be proffered for a proper purpose under Rule 404(b); 2) the evidence must be relevant to that purpose pursuant to Rule 402; 3) the evidence's "probative value must outweigh its prejudicial effect under Rule 403"; and 4) the jury must be charged with regard to the limited purpose for which the bad act evidence is admitted. *United States v. Sampson,* 980 F.2d 883, 886 (3d Cir. 1992); *see also Huddleston v. United States,* 485 U.S. 681, 691-692, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771, 783-784 (1988).

The Government first notices its intention to introduce evidence of association between Flood, Vance, Davis, Hamlin and Brubaker and that such association "involved the distribution of marihuana." Government' Motion, p. 2. The Government has since argued that this evidence "is intrinsic to the charged crimes". Government's Response (Document No. 311), p. 3. The Court notes that the prior association sought to be introduced is indeed intrinsic to the offenses charged and the use of F.R.E. 404(b) to introduce this evidence is not necessary as it relates to the current charges. *U.S. v. Sriyuth,*

98 F.3d 739, 747 (3d Cir. 1996).

The Court has already recognized the dichotomy between "intrinsic" and "extrinsic" acts has not been explicitly recognized by the Third Circuit Court of Appeals, but that only a reference to "extrinsic" acts has been recognized. *U.S. Lafferty*, 372 F.Supp. 2d 446, 463 (W.D.Pa. 2005)(citing *Gov't of Virgin Islands v. Archibald*, 987 F.2d 180, 184-185 (3d Cir. 1993). Despite the lack of an explicit sanction from the Court of Appeals, the analysis conveys the same meaning and the Court will treat it as such. Thus, an understanding of the origination of this conspiracy and the agreement and relationship between its actors is integral to proving the charges of conspiracy and possession with intent to distribute. This evidence provides context to the circumstances of the present seizure and accompanying arrests. For this reason, evidence of the origin of the association between Flood and Brubaker, Davis, Hamlin and Vance is intrinsic to the charge of conspiracy and possession with intent to distribute and qualification of this evidence under F.R.E. 404(b) is not necessary for its admission. Additionally, the other reasons for the introduction of such evidence outlined above are proper purposes and are explicitly permitted by F.R.E. 404(b).

As to the relevancy of the evidence of Flood's uncharged crimes committed with the above-named individuals, they would establish the basis for the association between these individuals and how they came to associate with Flood. This same evidence along with evidence of Flood's previous drug use and 1992 conviction can also help the Government establish the knowledge and intent of Flood to engage in the alleged conspiracy by demonstrating his awareness of the drug trade from his previous actions and the intent of conspiring with others to possess with an intent to distribute the marijuana seized by authorities that resulted in the present charges. It appears that Flood's defense is that he was

5

not a part of the conspiracy and that Brubaker had the marijuana delivered to Flood's home while Flood was "incapacitated by drugs provided by Mr. Brubaker." Flood's Response (Document No. 303), p. 4. In light of Flood's defense, the prior bad acts are relevant to proving Flood's intent and knowledge to take part in the conspiracy including the time period when delivery of the marijuana was occurring.

The Court also agrees with the Government that this same evidence of prior bad acts can rebut any claim of mistake or surprise made by Flood with respect to the fact that a quantity of several hundred pounds of marijuana was found in his residence. Evidence that similar acts and crimes were committed by Flood prior to the charged criminal acts can circumstantially establish Flood's awareness of the drug trade and such criminal acts will, when coupled with the evidence of the present crime, become relevant to evaluate Flood's intent for the criminal acts currently charged. Flood's prior association with others for the commission of illegal acts is also relevant to plan and preparation. The Defendant's argument to the contrary that these prior acts "are not 'inextricably blended or intertwined'" is incorrect. Flood's Response, p. 4. If the prior bad acts evidence of a prior conviction or previous drug deals that are to be used to demonstrate the "plan" or "preparation" always needed to be so "blended or intertwined with the current conspiracy charged" they would always be intrinsic acts, not extrinsic, and thus it would not be necessary to set them forth in F.R.E. 404(b). *Id.* The Government contends that Flood engaged in a course of conduct of transporting marijuana to the Altoona area for its sale and evidence that he had done so in the past can circumstantially establish the existence of such a plan for purposes of the acts alleged.

Flood also argues that he will not "contend that he did not have knowledge that Brubaker and Hamlin were previously involved in marijuana distribution" and thus the information proffered is not

6

relevant to "knowledge." However, the Government is apparently offering this knowledge as evidence of Flood's knowledge of the alleged conspiracy as well as knowledge that the marijuana seized at his residence was expected to be delivered and was known by Flood to be within his residence at the time of its seizure by law enforcement authorities. Government Motion, p. 2. Contrary to Flood's argument, the Government is not seeking to use this evidence to prove motive, opportunity or identity. Flood's Response, p. 4.

Moving on to the third guideline, the F.R.E. 403 balancing test, the Government's analysis of this test is minimal. Meanwhile, Flood argues that the Government has sufficient evidence to present to the jury and that the "need for the [other crimes and acts] evidence is marginal." Flood's Response, p. 4. Indeed, the need for the evidence relative to the availability of other evidence to the prosecution must be considered when performing the balancing test under F.R.E. 403. *U.S. v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996). The Court of Appeals described the considerations as follows:

In applying this test, we must assess the "genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." *Id.* (citing *United States v. Cook,* 538 F.2d 1000, 1003 (3d Cir.1976); *United States v. Driggs,* 823 F.2d 52, 54 n. 2 (3d Cir.1987)). In *Cook,* we recited several factors to be considered in the balancing process:

... we must balance the actual need for that evidence in view of the contested issues and the other evidence available to the prosecution, and the strength of the evidence in proving the issue, against the danger that the jury will be inflamed by the evidence to decide that because the accused was the perpetrator of the other crimes, he probably committed the crime for which he is on trial as well.... The treasured principles underlying the rule against admitting evidence of other crimes should be relaxed only when such evidence is genuinely needed and would be genuinely relevant. (footnote omitted.)

*Cook,* 538 F.2d at 1003 (quoting *United States v. Goodwin,* 492 F.2d 1141, 1150 (5th

7

Cir.1974)). We noted that a significant danger of undue prejudice will be found to exist where there are "substantial possibilities ... that a jury will harbor strong adverse sensitivity" to the challenged evidence. *Id.* at 1004. In order to overcome this significant risk of unfair prejudice, the government must prove necessity. *Id.*

*U.S. v. Sriyuth*, 98 F.3d 739, 747 -748 (3d Cir. 1996). The Government intends to offer evidence of Flood's 1992 conviction, his prior drug use and his association with Brubaker, Hamlin, Davis and Vance, to prove various matters such as "intent, preparation, plan, knowledge, [association, and] absence of mistake of accident". F.R.E. 404(b). Flood offers that the Government already has the testimony of Flood's co-defendants, audio-recordings which will be offered against Flood, Flood's confession that he arranged for marijuana to be delivered to his home and the discovery of over five hundred pounds of marijuana within Flood's residence to prove these matters. Flood's Response, pp. 4-5. The Court does not view evidence of Flood's drug use as necessary to prove the matters above, but Flood's experience with the sale or delivery of illegal substance would assist in establishing Flood's awareness of the drug trade and demonstrate the prerequisite knowledge of such practices in order to counter a defense that Flood was otherwise "framed" or that the marijuana found at his house was "planted." In this manner, the 1992 conviction provides a background to a knowledge of the drug trade. It also provides a background for the confession that Flood supposedly gave to the Pennsylvania State Police and his interactions with police previously.

However, Flood's drug use lends nothing to the issues of the drug trade and this specific delivery allegedly made to his home. That is not to say that Flood's drug use does not bear upon certain other issues that the Government has not yet broached with the Court in this motion and that may be uncovered during examinations made at trial. The association of Flood with Brubaker, Hamlin, Davis

8

and Vance also provides the background of the planning and preparation with regard to the delivery of the marijuana and places the relationship among these individuals in context. Both the evidence regarding Flood's prior association and his prior conviction (even though it does not speak directly to the alleged criminal acts at issue) are probative of Flood's alleged criminal acts. They are both probative in that they place the alleged criminal acts in their respective contexts and explain Flood's background experiences with distribution of illegal substances such that the jury can understand Flood's capacity or lack of capacity to form an intent, or a plan and preparation, and his knowledge about how the drug trade works and how one operates in that trade, which could implicate him or exculpate him depending upon the nature of the testimony. Flood's history of drug use lends no probative value to the charges of conspiracy and possession with intent to distribute in the case *sub judice* and would only serve to cause prejudice among the jury for Flood. Therefore, Flood's use of illegal substances is not admissible under F.R.E. 404(b).

Consistent with the fourth prong of instructing the jury regarding their consideration of F.R.E. 404(b) evidence, the Court will charge the jury, in its discretion, during a point in the trial, before or after the presentation of such evidence with the Third Circuit Model Criminal Jury Charge at Chapter 2, § 2.23.

**Motion in Limine as to Raymond A. Rabreau (Document No. 288)**

### F.R.E. 609

The Government has filed a supplement in response to the Court's Order, which excluded Rabreau's 1989 conviction based upon the failure of this conviction to comply with the ten year time

9

period in F.R.E. 609(b) and the Government's failure at that time to offer a sufficient basis upon which the Court could determine that the further requirements of the balancing test set forth in F.R.E. 609(b) for convictions or releases from confinement that were more than ten years old. The Government's supplemental argument offers that despite the lack of guidance from the Third Circuit on this issue, other Courts of Appeal have found that revocation of parole and release from confinement imposed upon the revocation starts the ten year period of F.R.E. 609(b) anew. *See e.g., U.S. v. Gray*, 852 F.2d 136, 139 (4ᵗʰ Cir. 1988).[3] F.R.E. 609 (b) was modeled after a similar provision of the District of Columbia Code enacted in 1970, which allowed for the ten year period to run from "the date of the release of the witness from confinement imposed for his most recent conviction, or the expiration of the period of his parole, probation or sentence granted or imposed with respect to his most recent conviction, whichever is the later date." F.R.E. 609 advisory committee's note. Despite the fact that Committee noted that it chose to explicitly state that the period began from the date of conviction or release from confinement on the conviction only, without any reference to release from confinement imposed upon a parole revocation, the Court concurs with the Fourth Circuit's reasoning in *Gray* and applies that analysis to the circumstances existent in this case. *See id.* This results in a determination that the confinement which ended in June 2003 was confinement on the conviction.

According to Exhibit "A" to the Government's Supplement (Document No. 297), Rabreau was released from confinement on June 12, 2003, a confinement imposed upon a previous revocation of his

---

[3]In light of the fact that parole is no longer granted to newly sentenced convicts in the federal sentencing scheme and with the remaining cases on active parole or with the potential for being granted parole decreasing, a specific case dealing with parole revocations renewing this ten year period is unlikely to come before the Third Circuit. However, the same argument regarding renewal may be applicable to probation and supervised release revocations. *See U.S. v. McClintock*, 748 F.2d 1278, 1288 (9ᵗʰ Cir. 1984)(construing F.R.E.(b) time period under probation revocation).

parole status. This time is clearly within the ten year time limit in accordance with the interpretation

of F.R.E. 609(b) set forth in *Gray*. With subsection (b) satisfied with regard to the ten year time period,

the Court reviews the conviction's probative value relative to its prejudicial effect. F.R.E. 609(a).[4] The

Court relies herein upon the Government's argument set forth in its Brief at Document Number 78, filed

May 27, 2005, as it was the Government's last discussion of record regarding this balancing test since

the Court denied admission of this conviction based solely on a discussion of its age.

This Court has relied upon the following analysis in evaluating an accused's previous conviction

in the context of F.R.E. 609(a):

> In the case of *Government of Virgin Islands v. Bedford*, 671 F.2d 758, 761 (3d Cir.
> 1982), it was recognized that the Government bears the burden to demonstrate that the
> probative value outweighs the prejudicial effect. In determining if this has been
> accomplished, the courts have looked to the four non-exclusive factors of "(1) the kind
> of crime involved; (2) when the conviction occurred; (3) the importance of the witness'
> testimony to the case; (4) the importance of the credibility of the defendant." *Id.* at n.4.

*U.S. v. Davis*, 235 F.R.D. 292, 296 (W.D.Pa. 2006).

Clearly the 1989 conviction is similar to the instant charges and the crime occurred almost

twenty years ago. These circumstances will almost certainly prejudice Rabreau and lessen the

conviction's probative value respectively. Furthermore, the Court does not require an accused to

---

[4]The Court notes that it is important to differentiate between the standards in F.R.E. 609, subsections (a) and (b) with regard to an accused as the witness. In subsection (b) that standard is "Evidence of a conviction under this rule is not admissible...unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."; subsection (a)(2) reads in pertinent part: "evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." F.R.E. 609.

explicitly indicate whether he will testify, but the Court notes that only one witness was submitted on Rabreau's witness list and it is not Rabreau. The Court believes that there is a strong possibility in this case that Rabreau will testify and in light of the limited number of witnesses to be called on his behalf and with the possibility of Rabreau testifying in his own defense, Rabreau's testimony is important to his defense, but the Government's need to impeach Rabreau's truthfulness appears to be less necessary. This is because the Court has already found Rabreau's 2002 conviction for marijuana smuggling to be admissible pursuant to F.R.E. 609(a)(1). See Memorandum and Opinion of Court, dated April 28, 2006 (Document No. 149), p. 6. As to the final factor of credibility, Rabreau, should he testify, will place his credibility at issue and thus the 1989 conviction will be probative of his credibility to some extent. Nevertheless, the Government has not met its burden as the Court concludes that the balancing test weighs against admission of the 1989 conviction pursuant to F.R.E. 609(a)(1) after weighing all four factors. Rabreau's 1989 conviction is inadmissible at trial to attack his truthfulness.

## F.R.E. 404(b)

The Government seeks to admit, pursuant to F.R.E. 404(b), Rabreau's 1989 conviction as well as his active parole status in the District of Oregon for the 1989 conviction of "importing marijuana" at the time of his arrest for the current charges. Government's Motion (Document No. 288), pp. 3-4. The purposes for which the Government intend to introduce this evidence include " Mr. Rabreau's intent, his plan, preparation, knowledge and [rebuttal of] any evidence of mistake or innocent association." *Id.* The Government offers that Rabreau was aware that a condition of his parole was to seek permission before leaving the District of Oregon and that he had in fact requested and had been

12

denied permission to leave in the past; this circumstance, the Government offers, is "indicative of the criminal nature of the trip." *Id.* at p. 4. Rabreau's counsel has not responded to the Government's motion. The Government does not address the applicable four guideline analysis set forth below, but the Court applies it in accordance with established precedent.

Following the four guideline analysis of proposed F.R.E. 404(b) evidence, the Court first finds that the purposes for which the evidence will be offered are in fact permitted under the rule. The Court also concludes that Rabreau's parole status and the 1989 conviction are relevant to these purposes under F.R.E. 402 in light of the fact that Rabreau has maintained that he did not deliver any marijuana to the Flood residence. Balancing the probative value of the relevant evidence with its potential to be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury" and other factors applicable under F.R.E. 403, the Court finds that the Government's need for this evidence is key to its case against Rabreau. F.R.E. 403. Otherwise, Rabreau's trip from Oregon could be characterized as any other permissible cross-country trip that any person could undertake. However, that is not the case for Rabreau. Rabreau was not allowed to leave Oregon as a condition of his parole. His parole originated from a conviction which included a charge of marijuana importation, a circumstance that clearly places Rabreau's presence in Pennsylvania in context in light of the pending charges against him. Without this evidence, the Government's attempt to prove intent, absence of mistake or accident, along with the plan and preparation on the part of Rabreau would be substantially hampered. Had the circumstances been different and Rabreau had permission from his parole officer to travel to Pennsylvania, revelation of the 1989 conviction and his parole status would present more of a prejudicial effect on Rabreau at trial. But this is not the case. It appears that Rabreau will maintain

13

the position that he is unaware of the marijuana conspiracy at issue, that he did not transport the seized marijuana to Pennsylvania and that he was in fact transporting pottery or other legal items of commerce. The Government's proffered evidence is probative to the issue of whether Rabreau's cross-country trip to Pennsylvania was part of a planned conspiracy to deliver a large shipment of marijuana or whether he was merely in the wrong place at the wrong time. The 1989 conviction and the parole status have strong probative value and their introduction into evidence would not be "substantially outweighed" by any prejudice to Rabreau or confusion or misleading of the jury.

As was recognized with respect to the Rule 404(b) evidence regarding Flood, the Court has an obligation to instruct the jury regarding their consideration of F.R.E. 404(b) evidence, therefore the Court will charge the jury, in its discretion, during a point in the trial, before or after the presentation of such evidence using the Third Circuit Model Criminal Jury Charge at Chapter 2, § 2.23. This instruction will explain to the jury the significance of this evidence and direct them on how to use it for limited purposes with respect to the present charges and will direct the jury not to punish Rabreau for any parole violations or for his previous conviction.

**Flood's Motions in Limine (Document No. 302)**

Flood has filed separate motions within one document. In the first motion Flood has moved the Court to preclude the Government from introducing evidence regarding the nature of Flood's previous felony conviction, which the Government intends to prove as the predicate offense necessary to prove its charge under 18 U.S.C. § 922(g)(1), and Flood's basis for the preclusion is that he has offered to stipulate to the fact of a prior felony conviction. Flood's Motions (Document No. 302), p. 1. The

14

Government accepts the stipulation and agrees not to introduce into evidence the facts of that conviction in accordance with *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Government's Response (Document No. 311), pp. 1-2. Therefore, the Defendant's Motion is granted and the Government may not introduce evidence of Flood's previous conviction as long as Flood continues in his acceptance of this stipulation. The Court will thus instruct the jury that this element of that charge has already been proven by stipulation.

Flood next moves for a prohibition or limitation of his prior convictions for use under F.R.E. 609 and F.R.E. 404(b); the Government concedes that Flood's 1992 conviction is beyond the time limit set forth in F.R.E. 609(b) and agrees that it will not introduce this conviction for impeachment purposes under that rule. Flood's Motions, p. 2; Government's Response, p. 2. Nevertheless, the Government seeks to admit into evidence the history behind the association and relationship between Flood and Brubaker, Davis, Hamlin and Vance arguing that the association and relationship are intrinsic to the crimes charged and otherwise consistent with a confession given by Flood to the Pennsylvania State Police. Government's Response, pp. 2-3. As the Court found above, these matters are intrinsic to the crimes of conspiracy and possession with intent to distribute marijuana and are admissible at trial. Flood's 1992 conviction is also admissible under F.R.E. 404(b) as outlined above.

Flood also moves for the exclusion of any audio-recordings taped by Brubaker "until the Government first establishes, by clear and convincing evidence, a foundation for the admissibility of the tapes by establishing [the factors set for in *U.S. v. Starks*, 515 F.2d 112, 123 n. 11 (3d Cir. 1975)]." Flood's Motions, p. 3. The Government refers to this Court's previous ruling on the admissibility of

15

these audiotapes and in light of that ruling "acknowledges it must establish the necessary foundation

prior to the admission of the audio tapes at trial" and that otherwise the Court found a *Starks* hearing

unnecessary. Government's Response, p. 4.

In this Court's Opinion dated October 4, 2006, we addressed Flood's request for a *Starks*

hearing based upon his challenge to the authenticity of the audio-recordings of conversations that were

taped by Brubaker in a confidential informant role. At that time we stated:

> Flood presents no basis of "good cause" to the Court pursuant to Rule 12(e) that
> would allow the Court to grant Flood relief from his waiver of the issues presented in
> the present motion. In fact, as to the requested testing of the audiotapes, he presents no
> basis whatsoever for his assertion that testing is necessary. Nevertheless, the Court will
> not ignore its duty to address the issue of authenticity of such evidence at trial and will
> permit such evidence to be presented to the jury only after a *prima facie* showing of
> authenticity in accordance with the procedure under Federal Rule of Evidence 104(b).
> *U.S. v. Reilly,* 33 F.3d 1396, 1404 (3d Cir. 1994). However, the Court does not find the
> need for a *Starks* hearing,[6] as the Defendant has not presented a "colorable attack" as to
> the authenticity of the audiotapes in question so as to shift the burden to the Government
> to prove the audiotapes' chain of custody. *U.S. v. Starks,* 515 F.2d 112, 122 (3d Cir.
> 1975). The Defendant's attack only consists of a general request for testing the
> authenticity of the audiotapes possessed by the Government, the authenticity of which
> must be established by the Government at the time of trial even in the absence of this
> motion by Flood.

> [6]In *U.S. v. Starks* 515 F.2d 112, 121 n.11(3d Cir. 1975) the Court of
> Appeals for the Third Circuit adopted a seven factor test for [sic] through which the
> Government must demonstrate with clear and convincing evidence that a proffered
> recording is authentic and accurate before its admission into evidence at trial. The
> seven factors are not listed here as that analysis is not necessary for the purposes
> of the issue before the Court.

Memorandum Opinion (Document No. 200), pp. 4-5. Recognizing that this analysis did not present

in depth review of the current status of the *Starks* precedent, the Court welcomes this opportunity to

16

re-visit this issue. In *Starks*, the Court of Appeals for the Third Circuit found that as a foundation for

the admission of audio-recordings at trial, the Government must establish that the audio-recordings are

authentic by "clear and convincing evidence". The pertinent part of the *Starks* decision reads as

follows:

> While proof of facts creating a sufficient foundation for the admission of a tape
> recording is a matter to be decided by the trial court, it does not have unbridled
> discretion to disregard the problems inherent in use of such evidence. Tape recordings
> are not readily identifiable as the original version. They are peculiarly susceptible of
> alteration, tampering, and selective editing. Because proffer of such evidence may, in
> the particularized circumstances of a given case, involve one or more of these problems
> in varying degrees it is difficult to lay down a uniform standard equally applicable to all
> cases. However, a useful exposition which commends itself to us is that in Judge
> Herland's opinion quoted in the margin.[11] Moreover we agree with the statement by the
> Second Circuit that the burden is on the government "to produce clear and convincing
> evidence of authenticity and accuracy as a foundation for the admission of such
> recordings . . .." *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967), *cert. denied*,
> 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).
>
>   [11] "A review of the authorities leads to the conclusion that, before a sound
>   recording is admitted into evidence, a foundation must be established by
>   showing the following facts:
>
>   (1) That the recording device was capable of taking the conversation now
>   offered in evidence.
>
>   (2) That the operator of the device was competent to operate the device.
>
>   (3) That the recording is authentic and correct.
>
>   (4) That changes, additions or deletions have not been made in the recording.
>
>   (5) That the recording had been preserved in a manner that is shown to the court.
>
>   (6) That the speakers are identified.
>
>   (7) That the conversation elicited was made voluntarily and in good faith,

without any kind of inducement."

*United States v. McKeever*, 169 F.Supp. 426, 430 (S.D.N.Y.1958).

When a colorable attack is made as to a tape's authenticity and accuracy, the burden on those issues shifts to the party offering the tape, and the better rule requires that party to prove its chain of custody. Such a demand was made by defendants, resisted by the government, and refused by the trial court. The government contends that the presumption of regularity which attaches to the handling of evidence within the control of public officials overcomes the chain of custody problem. The cases relied upon, principally *United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973), and *United States v. Daughtry*, 502 F.2d 1019, 1021 (5th Cir. 1974) suggest that when evidence of a physical or documentary nature has been introduced, the trial court is entitled to assume that public officials did not tamper with exhibits in their possession in the absence of some evidence suggesting otherwise. No authorities in this circuit standing for such a rule have been called to our attention. The presumption of regularity, if it can be dignified as a rule, does not serve as a substitute for evidence when authenticity is, as here, challenged on not insubstantial grounds. At best it may relieve the government of the necessity for offering proof of custody until the integrity of the evidence has been put in issue. Here, as early as the May 3rd pre-trial conference, there were extant several versions or copies of the tape of varying degrees of intelligibility. The defendants put the government on notice that they questioned the tape's authenticity. If there is a presumption of regularity it cannot in these circumstances substitute for evidence or shift to the defendants the burden of disproving authenticity. Therefore, the erroneous admission of G-3, requires a new trial.

*U.S. v. Starks*, 515 F.2d 112, 121 -122 (3d Cir. 1975).

What confounds the continued confidence in this analysis is the fact that the Federal Rules of Evidence went into effect a few months after the *Starks* holding. F.R.E. 104(b) and F.R.E. 901 then addressed the issue of authenticity of matters brought before the Court and conditioned their admission upon a preponderance of the evidence standard rather than the clear and convincing evidence standard required by *Starks*. This implicit conflict between the Federal Rules of Evidence and Third Circuit precedent emerged as recognized by Judge Shapiro in *U.S. v. Tubbs*, 1990 WL 27365 at * 3, 1990 U.S.

18

Dist.LEXIS 2761 at *7-9 (E.D.Pa. March 12, 1990):

A threshold issue is the burden of proof the government must meet in order to satisfy the *Starks* criteria. The government argues that it only must produce evidence sufficient to support a jury finding that the voice is defendant's, the standard under Federal Rules of Evidence 901(a).[5] Defendant argues that the government must prove the identity of the speaker by clear and convincing evidence. *Starks* states that "the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings.' " 515 F.2d at 121 (quoting *United States v. Knohl,* 379 F.2d 427, 440 (2d Cir.), *cert. denied,* 389 U.S. 973 (1967)). However, *Starks* refers to a clear and convincing standard only in reference to "authenticity and accuracy" and not identification and does not state the burden of proof applicable to issues of identification. *Starks* was decided before the Federal Rules of Evidence took effect on July 1, 1975. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims."

[5]The Government argues that Rule 104(b), which covers conditional relevancy, governs. The requirement of sufficient evidence to support a jury finding is the same; Rule 901 is specific to authentication, the issue here.

In *Huddleston v. United States,* 485 U.S. 681, 690 (1988), a case concerning a conditional relevance provision in Rule 104(b) similar to Rule 901(a), the Supreme Court held that

[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.

The standard under Rule 901(a) is that of Rule 104(b). The government need only produce evidence sufficient to convince a reasonable jury by a preponderance of the evidence that defendant is the speaker in order to permit a jury to hear the tape recording. The testimony of the government witness is sufficient for a reasonable juror to decide that defendant was the speaker recorded on the electronic tape. Although

19

neither the parties nor the court could find relevant cases in this circuit, other courts have found FBI identification of recorded voices following brief conversations with the defendant sufficient for admissibility. *See United States v. Cooper,* 868 F.2d 1505, 1519 (6th Cir.1989), *cert. denied,* 109 S.Ct. 2440 (1989); *United States v. Cerone,* 830 F.2d 938, 949 (8th Cir.1987) ("Minimal familiarity is sufficient for admissibility purposes."), *cert. denied,* 486 U.S. 1006 (1988); *United States v. Bice-Bey,* 701 F.2d 1086, 1090 (4th Cir.), *cert. denied,* 464 U.S. 837 (1983). "Attacks on the accuracy of the identification go to the weight of the evidence, and the issue is for the jury to decide." *United States v. Marin-Cifuentes,* 866 F.2d 988, 995 (8th Cir.1989).

It was this reading of the Federal Rules of Evidence that influenced this Court to conclude previously that the issue of the admissibility of the audio-recordings in the case *sub judice* is to be determined by use of the less stringent threshold of F.R.E. 104(b) rather than the clear and convincing evidence standard of *Starks*. A more recent unpublished opinion of the District Court of the Eastern District of Pennsylvania has followed this approach. *U.S. v. Stills,* 2006 WL 1737496 (E.D. Pa. June 22, 2006). The Court continues to believe this to be the correct standard to apply to the admission of the audio-recordings in the case *sub judice*, however, the continuing impact of *Starks* must be addressed in spite of that belief.

While the Third Circuit has not explicitly addressed the issue of the effect of the enactment of the Federal Rules of Evidence upon the *Starks* standard and criteria, it has issued opinions that have reviewed the application of that holding to the findings of various district courts that have continued to apply the *Starks* threshold and criteria to the admission of audio-recordings at trial. *U.S. v. Sanchez-Gonzalez,* 294 F.3d 563, 567-568 (3d Cir. 2002)(holding that district court did not abuse its discretion with respect to its findings as to two of the *Starks* factors); *U.S. v. Muzychka,* 725 F.3d 1061, 1069-1070 (3d Cir. 1984)(finding that district court did not abuse its discretion in denying suppression motion as the failure to record all conversations made between defendant and informant does not equate to a lack

20

of authenticity to those recordings which were made and that the unrecorded conversations were not proven to be exculpatory, but that their failure to be recorded goes to the weight of the recorded conversations); *U.S. v. Hodge*, 85 Fed.Appx. 278, 281(3d Cir. 2003)(unpublished) (holding that failure to identify speaker on audio recording is not the "dispositive" *Starks* factor in establishing the recordings' "foundation").

In light of the key role the audio-recordings are expected to play in this prosecution, and in the absence of any direct discussion or guidance from the Third Circuit regarding the survival of the *Starks* holding in light of the enactment of the Federal Rules of Evidence in 1975, the Court finds that compliance with the *Starks* threshold of "clear and convincing" evidence will be required of the Government to prove the tapes' authenticity in this matter, despite the Court's belief that this more demanding threshold of *Starks* did not survive the enactment of the Federal Rules of Evidence.[5] The Defendant's motion is thus granted and a *Starks* hearing will be scheduled on Monday, May 7, 2007 after completion of jury selection and will be conducted outside of the hearing of the jury prior to the expected time of the Government's offering of the audio-recordings.[6] At the conclusion of this hearing the Court will rule upon the authenticity of the audio-recordings pursuant to the *Starks* standard and alternatively, under the standard set forth in F.R.E. 104(b) and F.R.E. 901 in order to facilitate any possible future ruling on appeal should one party seek to appeal the Court's ruling on this matter.

---

[5]Until this Court's belief is made certain by a decision of the Court of Appeals for the Third Circuit, it remains only a belief. Therefore, it appears prudent to apply the higher standard.

[6]The audio-recordings that will be subject to the *Starks* hearing are those ordered admissible in the Court's order dated April 28, 2006 (Document No. 149), to wit: Government's Suppression Hearing Exhibits Three, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen (Taped audio-recordings dated 3/5/2004, 3/15/2004, 3/18/2004, 3/22/2004, 4/2/2004, 4/5/2004 (two recordings) and 4/9/2004 (three recordings)). Government Suppression Exhibits Four and Five (Taped audio-recordings dated 3/7/2004 and 3/10/2004) were deemed inadmissible. *Id.*

21

Flood's final motion requests exclusion of any testimony of Trooper Schaefer that includes his opinion on the contents of the audio-recordings. Flood's basis for this argument is his belief that the written summaries of the audio-recordings within Trooper Schaefer's written report are in fact summaries that "differ substantially from the actual words captured on the tape." Flood's Motions, p. 4. Flood argues that the actual recordings are the "best evidence of what was stated by the Defendant and Mr. Brubaker on the various dates in question." *Id.* The Government concedes that "the audio tapes are the actual evidence", no opinion evidence will be offered regarding the contents of the audio-recordings and "[t]he determination of the contents of the audio tapes is left to the province of the jury." Government Response, pp. 4-5. The Court agrees with the Government's position. Furthermore, the Court refers the parties to Federal Rules of Evidence 1001, 1002 and 1003 regarding the admissibility of original recordings and their duplicates. However, the controlling rule on such matters is Federal Rule of Evidence 1008, which makes it the function of the jury to determine "whether other evidence of contents correctly reflects the contents" of a recording. Thus, even if Trooper Schaefer's summaries complied with F.R.E. 104, the jury would determine if they were correct when compared to an original of the audio-recordings. Therefore, the Defendant's motion is denied as moot in light of the Government's concession that it will not inquire as to Trooper Schaefer's opinion of the contents of the audio-recordings sought to be admitted by the Government.

**Rabreau's 2002 conviction**

In the Court's ruling on April 28, 2006, it deferred ruling upon the admission of Rabreau's 2002 conviction for marijuana smuggling pursuant to F.R.E. 404(b) until the time of trial:

The Government has also provided notice of its intent to introduce Rabreau's 1988 and

22

2002 convictions for marijuana smuggling and importation of marijuana pursuant to Rule 404(b). Government's Omnibus Response, p. 7. The Government argues that these convictions would be used to demonstrate criminal intent, knowledge of marijuana smuggling and distribution, or discredit claims of "mistake, lack of knowledge, or innocent association." Government's Omnibus Response, p. 9. The Government and the Defendant request that the Court rule on the admissibility of such evidence outside the hearing of the jury, but at differing times: at the time of trial, as requested by the Government or at a pre-trial hearing, at the request of the Defendant. Consistent with the Court's practice, the Court will defer ruling on this Rule 404(b) matter until the time of trial when the Government seeks to admit such evidence.

Memorandum Opinion (Document No. 149), pp. 3-4. Now is the appropriate time to rule upon the admission of the 2002 conviction pursuant to F.R.E. 404(b).

Applying the same four guidelines utilized above for the F.R.E. 404(b) analysis of Rabreau's parole status and 1989 conviction, the Court finds that the Government is offering the 2002 conviction for the proper purposes of intent, knowledge, and lack of mistake or accident. The 2002 conviction for marijuana smuggling is relevant to Rabreau's knowledge of marijuana trafficking as alleged to have occurred in this case, and it also bears upon his alleged intent in partaking in the conspiracy charged and any claim of mistaken or accidental association that Rabreau may offer. The conviction in 2002 demonstrates the breadth of Rabreau's experience with marijuana smuggling which in turn bears upon what Rabreau was aware of in light of his experience. If Rabreau was aware that others he had associated with trafficked in marijuana, then his actions are better understood in light of his experiences and his intent behind his actions is better understood as well. The lack of mistake or accident follows from this knowledge and intent or lack thereof. Therefore, it is relevant in light of the fact that Rabreau is contesting the conspiracy charge.

Balancing the probative value of the evidence versus its possible unfair prejudice and other

23

negative effects as outlined in F.R.E. 403, just as the 1989 conviction was found to be probative, the Court finds the 2002 conviction to be more probative in consideration of its age and similarity to the crime Rabreau with which is charged. Of course, any prior conviction would prejudice a defendant if admitted against him. Still the probative nature of the 2002 conviction establishes Rabreau's experiences that can be used by the Government to construct a basis for concluding that Rabreau is an individual who knows how to do what he is alleged to have done, and if he did such thing in the past, his knowledge of those actions could be probative of his alleged criminal intent. The probative value of the 2002 conviction is not substantially outweighed by "unfair prejudice, confusion of issues, or misleading the jury" or any other considerations under F.R.E. 403. The 2002 conviction survives the F.R.E. 403 analysis.

Finally, the fourth guideline of an instruction to the jury to assure their understanding of how the 2002 conviction is to be considered for limited purposes can easily be complied with in the same manner as all other F.R.E. 404(b) evidence: through the recitation of the Third Circuit Model Criminal Jury Charge at Chapter 2, § 2.23.

Therefore, Rabreau's 2002 conviction shall be admissible pursuant to F.R.E. 404(b) to prove intent, knowledge and absence of mistake or accident with regard to his association with his co-defendants, his presence in Pennsylvania, specifically Flood's residence and his resulting arrest.

24

**AND NOW**, this 4th day of May, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT:

1) Government's Motion *in Limine* as to Raymond A. Rabreau (Document No. 288), and it's Supplemental Information with Respect to Federal Rule of Evidence 609(b), will be DENIED IN PART as to Defendant Rabreau's 1989 conviction proffered pursuant to F.R.E. 609 and GRANTED IN PART as to that evidence proffered pursuant to F.R.E. 404(b);

2) Government's Motion *in Limine* as to Kevin P. Flood (Document No. 290), will be DENIED IN PART as to the conviction proffered pursuant to F.R.E. 609 and DENIED IN PART as to the Defendant Flood's history of drug use and GRANTED IN PART as to all other evidence proffered pursuant to F.R.E. 404(b);

3) Kevin P. Flood's Motions *in Limine* with Citations (Document No. 302) will be GRANTED IN PART as to the stipulation and preclusion of evidence as to the Defendant's predicate conviction for the charge at Count III, the Defendant's 1992 conviction sought to be introduced pursuant to F.R.E. 609, the request for a *Starks* hearing, DENIED IN PART as to any evidence of Defendant Flood's prior association with others in the counts in the indictment and his 1992 conviction sought to be introduced pursuant to F.R.E. 404(b) and DENIED IN PART AS MOOT as to any opinions anticipated to be offered by Trooper Charles Schaefer regarding the contents of the audio-recordings;

4) IT IS FURTHER ORDERED THAT evidence of Raymond A. Rabreau's 2002 conviction is admissible pursuant to Federal Rule of Evidence 404(b) for the purposes of proving intent, knowledge and absence or mistake or accident as set forth in the foregoing Memorandum Opinion; and

5) IT IS FURTHER ORDERED THAT the Court will hold a *Starks* hearing at the conclusion of jury selection on the afternoon of Monday, May 7, 2007.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**