IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL NO. 3:2004-36 |
| ) | |
| KEVIN P. FLOOD and ) | |
| RAYMOND A. RABREAU, a/k/a "J.P.," ) | JUDGE GIBSON |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on Defendant Flood's Motion in Limine (Document No. 302) where he challenged the authenticity of the audio recordings obtained through the assistance of Keith Brubaker (Brubaker), a confidential informant for the Pennsylvania State Police on this matter. Having conducted a *Starks* hearing on May 7, 2007 in this matter, the Court concludes that the audio recordings admitted at that hearing as Government Exhibits 5-14[1] are authentic and accurate by clear and convincing evidence. The Court *briefly* explores its reasoning in light of the parties' need for a ruling on this matter prior to opening statements in the trial to be held from May 7 through May 21, 2007.

In *U.S. v. Starks*, 515 F.2d 112, 121-122 (3d Cir. 1975), the Court of Appeals for the Third Circuit stated: "When a colorable attack is made as to a tape's authenticity and accuracy, the burden on

---

[1] The exhibit numbers refer to the exhibits admitted at the time of the *Starks* Hearing and not necessarily the exhibit numbers used at trial.

those issues shifts to the party offering the tape, and the better rule requires that party to prove its chain of custody." The foundation for the admission of audio recordings must be proven by "clear and convincing evidence" after consideration of seven factors set forth in *Starks:*

> (1) That the recording device was capable of taking the conversation now offered in evidence.
>
> (2) That the operator of the device was competent to operate the device.
>
> (3) That the recording is authentic and correct.
>
> (4) That changes, additions or deletions have not been made in the recording.
>
> (5) That the recording had been preserved in a manner that is shown to the court.
>
> (6) That the speakers are identified.
>
> (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*U.S. v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975).

Considering each factor in turn, the first factor is whether the device used was capable of recording the conversations sought to be admitted. The Government presented evidence that Trooper Charles Schaefer (Schaefer) had worked with the Olympus Pearlcorder that was utilized to record the conversations in issue, that the recorder had a microphone attached to it for reception of sound and that it was located inside the breast of Brubaker's jacket. Schaefer turned the recorder on after placing a micro-cassette within it and then turned it off after Brubaker returned to him and then removed the micro-cassette inside of the record. The micro-cassette and a working copy of it were later listened to revealing that the Pearlcorder had, in fact, recorded the intended conversations.

2

As to the competency of the operator, the second factor, Schaefer testified that he turned the Pearlcorder on and off, inserted a micro-cassette and removed the same after recording, had placed the Pearlcorder on Brubaker's person and that Brubaker was instructed not to tamper with the device or stop it at any time. Brubaker corroborated these facts and confirmed that he had followed the instructions. There is no evidence that Schaefer or Brubaker were incompetent to operate the device or otherwise tampered with it.

Regarding factors three, four, and six regarding authenticity and correctness, any changes in the recording and the identity of the speakers, Brubaker testified as to the persons he spoke to in the audio-recordings, namely Flood and Rabreau. Brubaker indicated that he spoke to Flood hundreds of times and could identify his voice for purposes of the taped telephone conversations. He stated that he had been introduced to Rabreau by Flood, and spoke to both Rabreau and Flood face-to-face as reflected in the other audio-recordings. After Brubaker completed his conversations, Schaefer removed the micro-cassettes and "broke the tabs out", that is the plastic tabs on each of the micro-cassettes which prevent any recording over the original content of the conversations Brubaker had recorded on the micro-cassettes. With the speakers being identified by Brubaker and with the micro-cassettes having been secured from further recording or alterations, the Court finds the content of the micro-cassettes to be authentic and correct.[2]

As to the fifth factor, the preservation of the recordings, in addition to Schaefer "break[ing] the

---

[2] With respect to the Court's previous ruling on October 4, 2006 (Document No. 200) regarding the issue of authenticity of the audio-recordings in question, the Court finds in the alternative that the Government has also established by a preponderance of the evidence that the audio-recordings are authentic and has made the necessary showing under Federal Rules of Evidence 104(b) and 901 for their admission into evidence. Pursuant this standard and rules, the audio-recordings are admissible at trial.

tabs out", it was proven that Schaefer, not Brubaker handled each micro-cassette when inserting it into and removing it from the Pearlcorder. Schaefer then retained possession of the micro-cassettes in a locked desk drawer or locker in his office and subsequently turned all of them over to Trooper Dennis Drake for reproduction of work copies on regular sized audio-cassettes for Schaefer's use. Schaefer then placed the micro-cassettes in individual bags which were sealed by him at the top. Schaefer later observed the District Attorney of Blair County, David Gorman, place the sealed bags containing the micro-cassettes in a safe. Schaefer later observed District Attorney Gorman remove the same bagged micro-cassettes from the safe and give them to Schaefer who in turn gave them to the Assistant United States Attorney assigned to this case. After removing the micro-cassettes from the sealed bags in court during the *Starks* hearing, Schaefer confirmed that each of the micro-cassettes was marked in his own handwriting and that these markings had been made prior to the micro-cassettes being placed in the sealed bags.

Finally, as to the voluntariness of the conversations, the Court notes that with regard to all conversations that are presented in Government Exhibits 5-14 Brubaker consented to the recording of his voice. While the Court notes that the Defendants argue that the other participants in the conversations did not know of the recording, and therefore did not consent to the recording, such an argument would place this factor on its head. Surreptitious recording of criminal suspects would never occur if confidential informants had to obtain express permission of the suspects to tape their voices and conversations. This clearly is not what is intended by this factor. More to the point the Court finds that no threats were made against the Defendants by Brubaker to coerce them to engage in the conversations or make the responses that were recorded in Government Exhibits 5-14. This is what the

Court believes the seventh factor concerns and the Court finds no basis to conclude a lack of voluntariness existed.

Therefore, granting to the Defendants the benefit of the doubt that a colorable attack was made upon the authenticity or accuracy of these recordings, the Court concludes that all seven *Starks* factors nonetheless favor admission of Government Exhibits 5-14.

AND NOW, this 8th day of May, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Kevin P. Flood's Motion in Limine (Document No. 302) as to the *Starks* challenge that sought to exclude, based upon lack of authenticity and accuracy, the Government audio-recordings to be presented to the jury in this trial is DENIED.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE